SCM CORPORATION

v.

LANGIS FOODS LTD., Appellant.

No. 74–1841.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 8, 1975

Decided June 23, 1976.

As Amended Nov. 12, 1976.

Francis W. Guay, Washington, D. C., with whom Edward S. Irons, Washington, D. C., was on the brief, for appellant.

George Gottlieb, New York City, with whom Donald L. Dennison, Arlington, Va., was on the brief, for appellee. Michael I. Rackman, New York City, also entered an appearance for appellee.

Richard G. Kline, Washington, D. C., with whom Lawrence E. Carr, Jr., Douglas B. Henderson and Edward T. Colbert, Wash-

ington, D. C., were on the brief, for The Bar Ass'n of the District of Columbia as amicus curiae.

Before McGOWAN, TAMM and ROBB, Circuit Judges.

Opinion for the court by Circuit Judge McGOWAN.

McGOWAN, Circuit Judge:

This case presents the issue whether a corporate foreign national, which has applied for a trademark registration in its home country, has priority in registering that trademark in the United States over a domestic corporation when: (1) the foreign national filed a trademark application in its home country without prior use of the trademark in any country; (2) the foreign national subsequently filed a timely application to register the trademark in the United States based upon the earlier application in its home country; (3) the foreign national used the trademark in its home country, but not in the United States prior to filing its United States application; and (4) the domestic corporation used the trademark in the United States *after* the foreign national's home country application was filed but *before* the foreign national's United States application was filed. The District Court concluded that the domestic corporation was entitled to registration of the trademark. 376 F.Supp. 962 (1974). For the reasons set forth below, we reverse.

I

On March 28, 1969, appellant Langis Foods, a Canadian corporation, filed applications to register three trademarks in Canada—APPLE TREE, ORANGE TREE, and LEMON TREE.[1] Shortly thereafter, on May 15, 1969, Langis used these marks in

---

1. The trademarks were to cover dry crystals which, when mixed with water, would produce a fruit beverage. 376 F.Supp. at 964.

Canada.[2] Appellee SCM Corporation,[3] a domestic corporation, apparently started to use the LEMON TREE trademark in this country on the same day.[4] Both Langis and SCM subsequently applied to the United States Patent Office to register these trademarks: SCM's application, filed on June 18, 1969, requested registration of the LEMON TREE trademark; Langis's application, filed on September 19, 1969, requested registration of three trademarks—LEMON TREE, ORANGE TREE, and APPLE TREE. While these applications were pending in the Patent Office, SCM began using the marks ORANGE TREE and LIME TREE in the United States in June of 1970, and on July 22 of that year applied to the Patent Office to register those marks.

In August of 1971, the Patent Office published Langis's trademarks APPLE TREE and ORANGE TREE in its "Official Gazette" for purposes of opposition. Two months later, the Office issued a registration to Langis for the trademark LEMON TREE. SCM Corporation then instituted oppositions to the APPLE TREE and ORANGE TREE applications,[5] and also filed a petition to cancel the LEMON TREE registration.[6] On May 7, 1973, the Trademark Trial and Appeal Board denied the petition to cancel and dismissed the oppositions on the ground that, pursuant to section 44(d) of the Trademark Act of 1946, "[Langis] is entitled herein as a matter of right to rely upon the filing dates of its Canadian applications, i. e., March 28, 1969, and hence that it possesses superior rights in its marks as against [SCM]." 177 U.S.P.Q. at 719.

SCM then filed a complaint in the District Court seeking to have the LEMON TREE registration canceled and the APPLE TREE and ORANGE TREE registrations denied.[7] The District Court granted SCM's motion for summary judgment on the ground that "prior right in a trademark in the United States depends on priority of use in the United States and is not affected by priority of use in a foreign country." 376 F.Supp. at 967. Since Langis used the marks in Canada but not in the United States, the court canceled the LEMON TREE registration and remanded the proceedings opposing ORANGE TREE and APPLE TREE to the Board.[8] This appeal is taken from that final order.

---

2. Canada, unlike the United States, authorizes an applicant to seek registration of a "proposed trademark" before the mark is actually used. § 16(e), Trade Marks Act, Can.Rev.Stat. ch. T–10 (1970). Canadian registration is granted only if a declaration is filed alleging that use of the trademark in Canada has commenced. *Id.* § 39(2); *see* Morrow, *The Concept of "Use" in Canadian Trademark Law,* 65 T.M.Rep. 223, 224–25 (1975); Brief for Appellant at 4 n.2. *See generally* Robinson, *The Canadian Trade Marks Act of 1954: A Review of Some of Its Features,* 49 T.M.Rep. 792 (1959).

3. SCM is a successor in interest to John Lecroy & Son, Inc., which was the actual plaintiff in the District Court as well as a successor in interest to the first user of the mark in the United States. *See John Lecroy & Son, Inc. v. Langis Foods Ltd.,* 177 U.S.P.Q. 717, 718 (1973). We shall use SCM to refer to SCM and all predecessors in interest.

4. SCM used the trademark with respect to a fruit beverage similar to that of Langis. 376 F.Supp. at 964; *see* note 1 *supra.*

5. Any person who believes that he would be damaged by the registration of a mark may file an opposition to the application for registration with the Trademark Trial and Appeal Board, 15 U.S.C. §§ 1063, 1067 (Supp. IV, 1974).

6. Any person who believes that he is or will be injured by the registration of a mark may file a petition with the Trademark Trial and Appeal Board to cancel the registration. *Id.* §§ 1064 (1970), 1067 (Supp. IV, 1974).

7. Jurisdiction in the District Court was premised on 28 U.S.C. § 1338(a) (Supp. IV., 1974) and 15 U.S.C. § 1071(b)(1) (1970).

8. The United States District Court for the Eastern District of North Carolina recently expressed disagreement with the District Court decision in the case *sub judice,* noting that it found the District Court's ruling "difficult to reconcile" with the provisions of section 44(d) of the 1946 Act. *American Petrofina, Inc. v. Brown,* 391 F.Supp. 757 (E.D.N.C.1974). Moreover, we note that commentators analyzing the section 44(d) "right of priority" uniformly disapprove of the District Court's ruling in this case. Berry, *Recent Developments Affecting the Protection of Convention Marks in the United States,* 57 J.Pat.Off.Soc'y 591 (1975); Derenberg, *The Twenty-Seventh Year of Administration of the Lanham Trademark Act of*

II

Appellee SCM directs our attention to section 2(d) of the Trademark Act of 1946 (Lanham Act), 15 U.S.C. § 1052(d) (Supp. IV, 1974), which appears to preclude registration of the disputed trademarks by Langis. That section provides that "[n]o trademark . . . shall be refused registration on the principal register on account of its nature *unless* it—(d) Consists of or comprises a mark which so resembles . . . a mark or trade name *previously used in the United States by another* and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive . . . ." *Id.* (emphasis added). Langis has admitted that SCM was the first to use the marks in the United States, and nowhere suggests that SCM has abandoned them. Therefore, SCM argues, section 2(d) is "*in haec verba* a complete bar to Langis obtaining or maintaining registrations for its marks." Brief at 8 (footnote omitted).

This argument must, however, be evaluated in light of legislative attempts to reconcile differences between the American and foreign systems of trademark registration. In the United States, federal registration under the Lanham Act is generally based upon first use. *E. g.,* §§ 1051(a)(1) (Supp. IV, 1974), 1127 (1970). In Canada, although an application for registration may be filed prior to use, registration itself is not forthcoming until proof is made that use has commenced. *See* note 2. Certain provisions of the Lanham Act were designed to provide some protection to trademarks already registered elsewhere by foreign nationals, and Langis relies for protection specifically on section 44(d), which provides in relevant part that a trademark registration application filed by a foreign national "shall be accorded the same force and effect as would be accorded to the same application if filed in the United States on the same date on which the

application was first filed in [the] foreign country. . . ." *Id.* § 1126(d) (1970).

Both SCM and Langis recognize that section 44(d) protects trademarks for which registration applications have first been filed in a foreign country. The dispute in this case goes only to the precise scope of that statutory protection. SCM contends that section 44(d) gives a foreign applicant a *constructive filing date* in the United States as of the date of the foreign filing; the filing date is important because the party with the later filing date bears the burden of proving that it possesses the prior right to the mark. Brief at 15, *citing* 376 F.Supp. at 967, which in turn relies on *Jim Dandy Co. v. Martha White Foods, Inc.,* 458 F.2d 1397, 59 CCPA 1016 (1972). SCM would concede that it had the burden of proof in this proceeding with respect to the right to register LEMON TREE since its actual filing date was subsequent to Langis's "constructive filing date" of March 28, 1969. The District Court accepted this view of section 44(d), and since Langis admitted that it had not used the mark in the United States, granted summary judgment for SCM. 376 F.Supp. at 967–68.

Appellant Langis offers a second and, in our view, more plausible interpretation of section 44(d). Langis suggests that section 44(d) grants a foreign applicant which has used the trademark in its home country *after* the foreign filing but *prior* to the actual United States filing a *constructive use date* as of the date of the foreign filing. Under this view, Langis would have priority since its constructive use date of March 28, 1969 preceded SCM's actual use date of May 15, 1969.

We think the structure of the Lanham Act reinforces Langis's interpretation of section 44(d). In the first place, section 1 of the Act, 15 U.S.C. § 1051(a)(1) (Supp. IV, 1974), requires an applicant for registration to indicate the date the trademark was first used in commerce in the United States; but

*1946,* 64 T.M.Rep. 339, 368–69 (1974); Derenberg, *The Lemon Tree Case—Act II,* 5 Int'l Rev.Ind.Prop. & Copyright Law (IIC) 292 (1974), also printed in Lemon Tree—2. Akt, Grur Int'l 373 (1974); Note, Registration of

Trade-Marks in the United States by Foreign Nationals: Is There a Use Requirement?, 8 Cornell Int'l L.J. 189, 200–01 (1975); 1975 Brigham Young Univ.L.Rev. 308; 44 Geo. Wash.L.Rev. 178 (1975).

foreign nationals applying pursuant to section 44(d) are exempted from that requirement, *id.* § 1126(d)(2) (1970). Moreover, the 1946 Act deals specifically with the protection to be accorded to rights acquired by third parties, and it expressly protects only those "rights acquired by third parties before the date of the filing of the first application in the foreign country . . . ." *Id.* § 1126(d)(3). The Lanham Act also provides that nothing in section 44(d) "shall entitle the owner of a registration granted under . . . section [44] to sue for acts committed prior to the date on which his mark was registered in this country unless the registration is based on use in commerce." *Id.* § 1126(d)(4) (emphasis added). The clear implication is that section 44 recognizes registration based on something other than "use in commerce," namely, a foreign registration. *See id.* § 1126(e).

Finally, there is section 44(b) of the Act, which provides:

> Any person whose country of origin is a party to any convention or treaty relating to trademarks, trade or commercial names, or the repression of unfair competition, to which the United States is also a party, or extends reciprocal rights to nationals of the United States by law, *shall be entitled to the benefits of this section under the conditions expressed herein to the extent necessary to give effect to any provision of such convention, treaty or reciprocal law, in addition to the rights to which any owner of a mark is otherwise entitled by this chapter.*

*Id.* § 1126(b) (1970) (emphasis added); *see id.* § 1126(c), (e). This intent to give effect to the provisions of applicable treaties and conventions concerning trademarks is further evidenced in section 45 of the Act, which declares that the intent of Congress in enacting the 1946 Act was "to provide rights and remedies stipulated by treaties and conventions respecting trade-marks . . . ."[9] *Id.* § 1127. An examination of the relevant international treaty—the International Convention for the Protection of Industrial Property (the Paris Union Treaty)—resolves whatever doubt we may have concerning the reach of section 44(d).

As revised in London in 1934, Article 4 of the Paris Union Treaty provides:

> A. (1) Any person who has duly applied for . . . the registration of a . . . trade mark in one of the countries of the Union . . . shall enjoy for the purposes of registration in other countries a right of priority during the periods hereinafter stated [six months for trademarks].
>
> (2) Any filing having the value of a formal national filing by virtue of the internal law of each country of the Union or of international treaties concluded among several countries of the Union shall be recognized as giving rise to a right of priority.

9. *See* S.Rep.No.1333, 79th Cong., 2d Sess. 4–5 (1946):

> The [1946] Act is substantially the act of February 20, 1905. . . .
>
> . . . [I]deas concerning trademark protection have changed in the last 40 years and the statutes have not kept pace with the commercial development. In addition the United States has become a party to a number of international conventions dealing with trade-marks, commercial names, and the repression of unfair competition. These conventions have been ratified, but it is a question whether they are self-executing, and whether they do not need to be implemented by appropriate legislation.
>
> Industrialists in this country have been seriously handicapped in securing protection in foreign countries due to our failure to carry out, by statute, our international obligations. There has been no serious attempt fully to secure to nationals of countries signatory to the conventions their trade-mark rights in this country and to protect them against the wrongs for which protection has been guaranteed by the conventions. Naturally under such circumstances foreign governments do not always give to citizens of the United States their convention rights. To remedy this discreditable situation is merely an act of international good faith.
>
> This bill attempts to accomplish these various things:
>
> 2. To carry out by statute our international commitments to the end that American traders in foreign countries may secure the protection to their marks to which they are entitled.

B. Consequently, *subsequent filing in one of the other countries of the Union before the expiration of these periods shall not be invalidated through any acts accomplished in the interval, as, for instance, by another filing, . . . or by use of the trade mark, and these facts cannot give rise to any right of third parties or any personal possession. The rights acquired by third parties before the day of the first application on which priority is based shall be reserved by the internal legislation of each country of the Union.*

53 Stat. 1748, T.S. 941 (emphasis added). This revised version clearly provides that an intervening use during the priority period cannot give rise to rights on the part of third parties.[10] The only rights of third parties specifically protected are "[those] rights acquired by third parties *before* the day of the first application on which priority is based."[11] Thus, to the extent that the property rights in this case depend on the Paris Union Treaty, Article 4 reinforces our conclusion that a foreign applicant's mark must be protected in this country from the date of the foreign application even as against an intervening first use by another in the United States. *See* Ladas, *Protection of Foreign Trade-Marks Registered Under the Convention in the United States Patent Office as Against Claimants Under the Common Law,* 34 Trademark Bull. (n.s. No. 11) 305, 308 (1939); Zelnick, *Foreign Trademark Applicants and Registrants and The Requirement of Use: The Right to Register,* 52 T.M.Rep. 641, 658–61 (1962).

### III

■ Our holding in this case is that section 44(d) of the Trademark Act of 1946, which implements Article 4 of the Paris Union Treaty, accorded appellant Langis a "right to priority" for the six months following the filing of its Canadian application for registration, that is to say, from March 28, 1969 to September 27, 1969; and that an intervening use in the United States during that period cannot invalidate Langis's right to registration in this country pursuant to an application filed on September 19, 1969.[12] We recognize that section 2(d), quoted at length at page 5 *supra,* prohibits registra-

10. There were two additional revisions to the Treaty after 1934, one at Stockholm in 1967 and one at Lisbon in 1958. Canada has not accepted the substantive provisions of those revised versions. *See* United States Department of State, Treaties in Force 373 (1976); 4 R. Callman, Unfair Competition, Trademarks and Monopolies § 99.1(a) (Supp.1975).

11. As first adopted in Paris on March 20, 1883, and as ratified by the United States on March 29, 1887, 25 Stat. 1372, T.S. 379, Article 4 of the treaty read as follows:

Any one who shall have regularly deposited an application for . . . a trade or commercial mark, in one of the contracting States, shall enjoy for the purpose of making the deposit in the other States, and *under reserve of the rights of third parties,* a right of priority during the periods hereinafter determined [generally three months].

In consequence, *the deposit subsequently made in one of the other States of the Union, before the expiration of these periods cannot be invalidated by acts performed in the interval, especially by another deposit, [or] by the employment of the mark.* (Emphasis added).
Although this version of Article 4 specifically provided that a subsequent filing could not be invalidated through any acts accomplished during the period of priority, including another filing or use of the mark, the fact that the Article also subjected the right of priority to the "rights of third parties" left some doubt as to whether that exception applied only to rights in a mark acquired *prior* to the foreign filing date or whether the exception in effect accorded protection to third party rights acquired after the foreign filing date. That ambiguity was clarified in the 1934 revision at London, which was ratified by the United States in 1938. 53 Stat. 1748, T.S. 941.

12. There are three possible positions that can be argued with respect to the use requirements applicable to section 44 filings by foreign nationals: (1) foreign nationals must allege use in commerce; (2) though use in commerce is not required, foreign nationals must nevertheless allege use somewhere; or (3) foreign nationals are not required to allege use at all. Section 44(d)(2) of the 1946 Act clearly exempts section 44(d) applications from the section 1 requirement that applications allege use in commerce 15 U.S.C. § 1051(a)(1) (Supp. IV, 1974); *id.* § 1126(d)(2) (1970). As to the other two possible positions, the official policy of the Patent Office has shifted with some regularity. *See British Insulated Callender's Cables, Ltd.,* 83 U.S.P.Q. 319 (Comm'r 1949) (there must be an allegation of use "somewhere"), *overruled in Societe Fromageries Bel,* 105 U.S.P.Q. 392 (Comm'r 1955) (the *"Merry Cow"* case) (there is no use requirement), overruled in *Certain*

tion of a trademark "previously used in the United States by another," 15 U.S.C. § 1052(d) (Supp. IV, 1974), but we cannot read that section in isolation from the context of the rest of the statute. *E. g., Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Our task is to endeavor to harmonize and give full effect to both sections 2(d) and 44(d). *E. g., Montgomery Charter Service, Inc. v. Washington Metropolitan Area Transit Commission,* 117 U.S.App.D.C. 34, 325 F.2d 230, 234 (1963). We need only interpret the word "previously" in section 2(d) to mean "before the filing date in the Convention country" in order to give meaning to both statutory provisions. As our earlier discussion indicates, both the structure of the Act and its legislative history support such an interpretation.

Since in our view Langis is entitled to a valid federal trademark registration, we reverse the decision of the District Court and remand the case with directions to dismiss the complaint.

*It is so ordered.*

Incomplete Trademark Applications, 137 U.S. P.Q. 69 (Comm'r 1963) (there must be an allegation of use somewhere). And there has been considerable disagreement among commentators on that issue. *Compare* Ladas, *What Does the Vienna Trademark Registration Treaty Mean to the United States?,* 63 T.M.Rep. 551, 559–63 (1973) (there must be use somewhere) *with* Zelnick, *Foreign Trademark Applicants and Registrants and the Requirement of Use: The Right to Register,* 52 T.M.Rep. 641, 650–51 (1962) (there is no use requirement).

The Trademark Trial and Appeal Board opinion in the instant case erroneously states that appellant Langis "had made no use of the marks 'LEMON TREE', 'ORANGE TREE', or 'APPLE TREE' . . . prior to the filing of its applications in this country." 177 U.S.P.Q. at 718. Nevertheless, the Board, citing the *Merry Cow* case, *supra,* upheld Langis's registration, thus overruling *Certain Incomplete Trademark Applications, supra,* and reinstating the policy that there is no use requirement.

In the *de novo* proceeding below, the District Court reviewed the Paris Union Treaty and the Trademark Act of 1946 and concluded that "[t]he decision of the Board . . . which reverts to the *"Merry Cow"* doctrine . . . is . . . in error." 376 F.Supp. at 966. In this respect, the opinion of the District Court is dictum. The record in the District Court clearly indicates that the applications filed by Langis with the Patent Office alleged use of the marks in Canada, during the applicable six month period, and there was thus no reason for the District Court to rule on the *Merry Cow* issue. The fact that the Trademark Trial and Appeal Board found it necessary to reach that question given its misstatement of the facts does not mean that, despite a record indicating to the contrary, the question was presented to the District Court. Appellee SCM contends that the *"Merry Cow"* issue is not presented by this case, Brief at 4–6, and we agree.