Paper No. 20
BAC

THIS DISPOSITION IS
CITABLE AS PRECEDENT OF THE TTAB        NOV. 12, 98

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
—————

Trademark Trial and Appeal Board
—————

Ultratan Suntanning Centers, Inc.

v.

Ultra Tan International AB
—————

Opposition No. 100,319
to application Serial No. 73/665,612
filed on June 9, 1987
—————

Charles Baxley of Loveman & Baxley for Ultratan Suntanning
Centers, Inc.

Robert Patch of Young & Thompson for Ultra Tan International
AB
—————

Before Seeherman, Hanak and Chapman, Administrative
Trademark Judges.

Opinion by Chapman, Administrative Trademark Judge:

Ultra Tan International AB has applied to register the

mark shown below for "ultra-violet lamp assemblies and

platforms and canopies equipped with ultra-violet lamps used in tanning the person, and sun lamps" (Int. Class 11).[1]



The application was filed on June 9, 1987, under Section 44(d) of the Trademark Act, with a claim of priority based on Swedish application No. 85-9845, filed December 18, 1986. (Applicant's Swedish application issued as Swedish Registration No. 249 046 on May 14, 1993).

As grounds for opposition, opposer has alleged that it is in the business of "operating tanning salons as well as marketing, leasing, selling and dealing otherwise in ultraviolet lamp assemblies for tanning of the person and suntanning preparations being cosmetic or non-medicated toilet preparations" under the mark ULTRATAN; that opposer and its predecessors-in-interest have continuously used the mark ULTRATAN in commerce since 1971 for suntanning preparations, since 1985 for tanning salons, and since 1987 for ultraviolet lamp assemblies; that opposer has "sold,

---

[1] Appl. Ser. No. 73/665,612, filed June 9, 1987. The application includes a disclaimer of the word "tan". The application was originally filed with goods in Int. Classes 3, 10, and 11. This opposition was filed against all three classes. On June 5, 1996 applicant filed an abandonment with prejudice of the goods in Classes 3 and 10, with opposer's written consent; and on July 29, 1996 the Board held that applicant's Classes 3 and 10 were abandoned with prejudice, and the opposition was dismissed

advertised and promoted Opposer's Goods and Services in interstate commerce under its ULTRATAN mark continuously from at least as early as 1971"; that opposer owns Registration No. 1,678,888 for the mark shown below for "tanning salons"[2], and application Serial Nos. 74/311,470[3] and 74/622,743[4]; and that applicant's mark, when used on its goods, so resembles opposer's previously used and registered mark, as to be likely to cause confusion, mistake, or deception.[5]

---

without prejudice as to those two classes.  The decision herein relates only to Class 11.

[2] Reg. No. 1,678,888, issued March 10, 1992, Section 8 affidavit accepted, Section 15 affidavit received.  The claimed dates of first use and first use in commerce are April 1, 1985 and May 1, 1985, respectively.  The registration includes a statement that the lining shown in the drawing is a feature of the mark, and does not indicate color.

[3] Ser. No. 74/311,470, filed September 8, 1992, for the mark ULTRATAN for "sun tanning machines", claiming dates of first use and first use in commerce of December 3, 1987 and January 20, 1988, respectively.  Action on this application has been suspended by the Examining Attorney.

[4] Ser. No. 74/622,743, filed January 17, 1995, for the mark ULTRATAN for "sun-tanning preparations, namely, suntan oils, creams, lotions and gels, and skin moisturizers, creams and lotions", claiming dates of first use and first use in commerce of March 11, 1954 and September 24, 1971, respectively.  Action on this application has been suspended by the Examining Attorney.

[5] Opposer also alleged that applicant's mark falsely suggests a connection with opposer; and that applicant's goods as identified in the U.S. application exceed the scope of the goods identified in applicant's Swedish Registration No. 249 046.  Neither of these issues was tried or briefed by the parties.  The Board will not further consider these grounds.



In its answer applicant has denied the salient allegations of the notice of opposition.

The record includes the pleadings; the file of the opposed application; opposer's testimony, with exhibits, of Robert A. Siegler; and opposer's notices of reliance on (i) applicant's answers to opposer's first set of interrogatories, and (ii) a status and title copy of opposer's Registration No. 1,678,888 prepared by the Patent and Trademark Office.[6]

Both parties filed briefs on the case[7]. Neither party requested an oral hearing.

Opposer's testimony establishes that opposer opened its first tanning salon in Manhasset, New York in 1985; that opposer incorporated in May or June 1986; that opposer

---

[6] Opposer's pleaded Registration No. 1,678,888 issued on March 10, 1992. The status and title copy of opposer's registration submitted with the notice of reliance was prepared by the Patent and Trademark Office in December 1995, and thus, does not include information as to the Section 8 affidavit, which was due on March 10, 1998. The records of this Office indicate that opposer timely filed a combined Section 8 and 15 affidavit, and that said combined affidavit was accepted by the Office.

When a registration owned by a party has been properly made of record in an inter partes case, and there are changes in the status of the registration between the time it was made of record and the time the case is decided, the Board will take judicial notice of, and rely upon, the current status of the registration as shown by the records of the Patent and Trademark Office. See TBMP §703.02(a), at page 700-10, and the cases cited therein. The Board hereby takes judicial notice of the current status of opposer's pleaded registration.

[7] Applicant has submitted no evidence on its behalf in this case, and applicant did not attend opposer's deposition of Mr. Siegler.

4

opened two more tanning salons in 1986, and in 1987 purchased one more salon and opened two more; and that opposer currently operates or licenses six tanning salons in New York State under the mark ULTRATAN and design. Opposer purchased Golden West Company, a manufacturer of ultra-violet sunbeds and sun lamps in 1988. Golden West first used the mark ULTRATAN for such goods in 1987. Opposer sells suntanning beds and suntanning preparations nationwide. The general price range of opposer's suntanning beds is from approximately $5,000 to $35,000 per bed; the tanning lamps sell for approximately $100 to $150 per lamp; and the suntanning lotions range from approximately $12 to $15 per bottle. Opposer advertises its suntanning beds and sun lamps in national trade magazines such as Looking Fit and Tanning Trends; and opposer advertises its services (as well as its goods) in local and national daily newspapers, such as "Newsday" and "The New York Times." Opposer also provided evidence that applicant is seeking representatives to market and sell applicant's sunbeds and other products under the mark ULTRA TAN to tanning salons, gym and fitness centers, hair salons, cosmetic salons, and swimming halls (Siegler, Dep. Ex. 23).

The question of priority does not arise against a registered mark in an opposition proceeding. That is, prior use need not be shown by an opposer relying on a

registration of its pleaded mark for its pleaded goods or services unless the applicant counterclaims for cancellation. See King Candy Company v. Eunice King's Kitchen, Inc., 496 F.2d 1400, 182 USPQ 108 (CCPA 1974); Massey Junior College, Inc. v. Fashion Institute of Technology, 492 F.2d 1399, 181 USPQ 272, footnote 6 (CCPA 1972); and David Crystal, Inc. v. Shelburne Shirt Co., Inc., 465 F.2d 926, 175 USPQ 112 (CCPA 1972). In view of opposer's ownership of a valid and subsisting registration for the mark ULTRA TAN and design for "tanning salons", the issue of priority with respect to tanning salons does not arise herein.[8]

Besides opposer's registration for tanning salon services, opposer has asserted it has prior use of its mark on suntanning preparations, and ultraviolet tanning beds and lamps. Opposer appears to believe that it can establish priority if it can show use of its mark for the goods at issue prior to the date applicant first used the mark in the United States, which opposer has shown, in that applicant has not yet used the mark in the United States. However, because applicant's application is based on a Section 44(d)

---

[8] Applicant's arguments regarding its priority based on the case of SCM Corporation v. Langis Foods Ltd., 539 F.2d 196, 190 USPQ 288 (DC Cir. 1976), are misplaced. Applicant appears to believe that because opposer did not prove use prior to applicant's Section 44(d) priority filing date, opposer cannot establish priority. However, as explained above, priority does not arise as an issue with regard to tanning salons in this case due to

claim, applicant is entitled to rely on the filing date of its Swedish application, which is December 18, 1986. Opposer's evidence does not establish opposer's use of its mark on ultraviolet tanning beds and lamps, or on suntanning preparations, from a date prior to December 18, 1986.

We turn to a determination of the question of likelihood of confusion. See In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). For the reasons which follow, we hold that a likelihood of confusion exists.

Regarding applicant's involved goods and opposer's involved services, it is a general rule that goods or services need not be identical or even competitive in order to support a finding of likelihood of confusion. Rather, it is enough that goods or services are related in some manner or that some circumstances surrounding their marketing are such that they would be likely to be seen by the same persons under circumstances which could give rise, because of the marks used thereon, to a mistaken belief that they originate from or are in some way associated with the same producer or that there is an association between the producers of the goods or services. See In re Melville Corp., 18 USPQ2d 1386 (TTAB 1991), and cases cited therein.

---

opposer's unchallenged registration for its mark for such services.

Moreover, it is well recognized that confusion in trade can occur from the use of similar (or the same) marks for products on the one hand and for services involving those products on the other hand.  See Safety-Klean Corporation v. Dresser Industries, Inc., 518 F.2d 1399, 186 USPQ 476 (CCPA 1975); and Steelcase Inc. v. Steelcare Inc., 219 USPQ 433 (TTAB 1983), and cases cited therein.

Applicant has never disputed that there could be customer overlap between opposer's tanning salon services, and applicant's goods as listed in its application. Moreover, a tanning salon owner or employee familiar with opposer's tanning salons operating under opposer's ULTRATAN mark, upon encountering ULTRATAN on sun lamps and ultra-violet lamps, might well as a result be confused.

The parties' marks include the identical word ULTRATAN, the only spoken portion of the marks.  Thus, the marks are identical in sound and in connotation.  The design features of the parties' marks are similar in that both employ a round design suggesting a sun, with horizontal lines therein.  The word ULTRATAN and the similar design features create a similar commercial impression, likely to be remembered by purchasers.  The differences in the design and type style are not enough to distinguish the marks.  That is, the differences are not likely to be recalled by purchasers seeing the marks at separate times.  The emphasis

in determining likelihood of confusion is not on a side-by-side comparison of the marks, but rather must be on the recollection of the average purchaser, who normally retains a general rather than a specific impression of the many trademarks encountered; the purchaser's fallibility of memory over a period of time must also be kept in mind. See Grandpa Pidgeon's of Missouri, Inc. v. Borgsmiller, 477 F.2d 586, 177 USPQ 573 (CCPA 1973); In re Mucky Duck Mustard Co., Inc., 6 USPQ2d 1467 (TTAB 1988); and Edison Brothers Stores v. Brutting E.B. Sport-International, 230 USPQ 530 (TTAB 1986).

We acknowledge that the word ULTRATAN and the sun-like designs in both marks are highly suggestive of opposer's services and applicant's goods. Nevertheless, both marks convey the same suggestive connotation; and there is no evidence of any third parties using ULTRATAN marks.

Based on the similarity between the marks, and the relationship of the parties' respective goods and services, we find that confusion is likely between applicant's mark and opposer's mark, when these marks are used on the respective goods and services of the parties.

Decision:  The opposition is sustained, and registration to applicant is refused.

E. J. Seeherman

E. W. Hanak

B. A. Chapman
Administrative Trademark
Judges, Trademark Trial and
Appeal Board