# United States Court of Appeals for the Federal Circuit

04-1419, -1420
(Serial Nos. 75/753,445 and 75/753,597)


IN RE DR. MATTHIAS RATH


<u>Roy S. Gordet</u>, of San Francisco, California, for appellant.

<u>John M. Whealan</u>, Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, for the Director of the United States Patent and Trademark Office. With him on the brief were <u>Cynthia C. Lynch</u> and <u>Nancy C. Slutter</u>, Associate Solicitors. Of counsel on the brief were <u>Lois E. Boland</u>, Director, and <u>Amy P. Cotton</u>, Staff Attorney, Office of International Relations.

Appealed from:  United States Patent and Trademark Office, Trademark Trial and Appeal Board

# United States Court of Appeals for the Federal Circuit

04-1419, -1420
(Serial Nos. 75/753,445 and 75/753,597)

IN RE DR. MATTHIAS RATH

_____

DECIDED: March 24, 2005

_____

Before BRYSON, LINN, and DYK, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> DYK. Concurring opinion filed by <u>Circuit Judge</u> BRYSON.

DYK, <u>Circuit Judge</u>.

Dr. Matthias Rath ("Rath") appeals from the decisions of the Trademark Trial and Appeal Board (the "Board") affirming the United States Patent and Trademark Office's ("PTO") refusal to register the marks "DR. RATH" and "RATH" ("the marks") on the principal register. <u>In re Rath</u>, 2004 TTAB LEXIS 18 (Trademark Trial & App. Bd., Jan. 22, 2004); <u>In re Rath</u>, 2004 TTAB LEXIS 19 (Trademark Trial & App. Bd., Jan. 22, 2004). The decisions of the Board have been consolidated on appeal. We affirm.

## BACKGROUND

Rath is a German citizen who applied to register the marks for goods and services including, <u>inter alia</u>, nutritional supplements, books, grains, and educational services. The applications were based upon ownership of a German trademark registration for the marks. The examiner refused to register the marks because the examiner found the marks to be primarily merely surnames. Section 2(e)(4) of the

Lanham Act, 15 U.S.C. § 1052(e)(4), bars such marks from registration on the principal register.

On appeal to the Board, the marks were again found to be primarily merely surnames, and therefore not registrable on the principal register under section 2(e)(4) of the Lanham Act, absent proof of acquired distinctiveness under section 2(f).[1]  In re Rath, 2004 TTAB LEXIS 18 at *9-10.  The Board rejected Rath's argument that the "primarily merely a surname" rule conflicts with the United States' obligations under the Paris Convention, and therefore cannot be relied upon by the PTO to refuse a foreign applicant registration of a mark already registered in his country of origin.  The Board also held that section 44 of the Lanham Act (which implements the Paris Convention) does not require registration of a mark that is primarily merely a surname, relying on our decision in In re Etablissements Darty et Fils, 759 F.2d 15 (Fed. Cir. 1985).  Rath appeals.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

DISCUSSION

I

We review the legal conclusions of the Board, including interpretations of the Lanham Act, 15 U.S.C. § 1051 et seq., without deference.  In re Int'l Flavors & Fragrances Inc., 183 F.3d 1361, 1365 (Fed. Cir. 1999).

---

[1]    Section 2(f) provides, in pertinent part, that "[e]xcept as expressly excluded in subsections (a), (b), (c), (d), (e)(3), and (e)(5) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce."  Lanham Act § 2(f), 15 U.S.C. § 1052(f) (2000).

II

Rath does not appeal the Board's holdings that his marks are primarily merely surnames under the meaning of section 2(e)(4).  Indeed, he specifically "concedes that the marks are primarily, merely surnames."  (Br. of Appellant at 2.)  Rather, he argues that the surname rule is at odds with the Paris Convention as applied to those holding foreign registrations.

Rath invokes article 6quinquies of the Paris Convention, which addresses the protection of marks registered in one member country in other member countries.  It states in pertinent part:

> A(1)  Every trademark duly registered in the country of origin shall be accepted for filing and protected as is in the other countries of the Union, subject to the reservations indicated in this Article.  Such countries may, before proceeding to final registration, require the production of a certificate of registration in the country of origin, issued by the competent authority.  No authentication shall be required for this certificate.
> . . . .
> B.  Trademarks covered by this Article may be neither denied registration nor invalidated except in the following cases:
> 1.  when they are of such a nature as to infringe rights acquired by third parties in the country where protection is claimed;
> 2.  when they are devoid of any distinctive character, or consist exclusively of signs or indications which may serve, in trade, to designate the kind, quality, quantity, intended purpose, value, place of origin, of the goods, or the time of production, or have become customary in the current language or in the bona fide and established practices of the trade of the country where protection is claimed;
> 3.  when they are contrary to morality or public order and, in particular, or such a nature as to deceive the public.  It is understood that a mark may not be considered contrary to public order for the sole reason that it does not conform to a provision of the legislation on marks, except if such provision itself relates to public order.

Paris Convention for the Protection of Industrial Property, July 14, 1967, art. 6quinquies, 21 U.S.T. 1583, 1643-44 (emphases added).

Rath argues that he is exempt from the surname rule because it does not fall within any of the three enumerated exceptions to the registration of foreign marks within the Paris Convention, and he is therefore entitled to registration of his mark on the principal register. The PTO urges that surname marks are descriptive, and therefore "devoid of any distinctive character" within the meaning of the Paris Convention, such that no conflict exists between the requirements of the Lanham Act and the Paris Convention. We need not decide whether the surname rule conflicts with the Paris Convention because we find that the Paris Convention is not a self-executing treaty and requires congressional implementation.

III

It is well established that executory treaties (those treaties that are not self-executing) have no direct effect until implemented by domestic law. Whitney v. Robertson, 124 U.S. 190, 194 (1888). See generally 1 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure § 6.6 (3d ed. 1999) (discussing executory and self-executing treaties). Our predecessor court held that "[t]he Paris Convention was not . . . self-executing and required implementing legislation." Kawai v. Metlestics, 480 F.2d 880, 884 (C.C.P.A. 1973). We are bound by the decisions of the Court of Customs and Patent Appeals ("CCPA"). South Corp. v. United States, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc). Rath argues, however, that the older CCPA decision of Master, Wardens, Searchers, Assistants & Commonalty of Co. of Cutlers v. Cribben & Sexton Co., 202 F.2d 779 (C.C.P.A. 1953), conflicts with Kawai. In that case, the CCPA concluded that the Paris Convention "is part of our law and no special legislation in the United States was necessary to make it effective here."

Master, 202 F.2d at 783. We are obligated to follow the later decision in Kawai because "the Court of Customs and Patent Appeals always sat in banc and therefore later decisions overcome earlier inconsistent ones." Celestaire, Inc. v. United States, 120 F.3d 1232, 1235 (Fed. Cir. 1997).

It is also plain that Kawai is correct. The Paris Convention itself suggests that it is not self-executing. Article 25 states that "[a]ny country party to this Convention undertakes to adopt, in accordance with its constitution, the measures necessary to ensure the application of this Convention" and that "[i]t is understood that, at the time a country deposits its instrument of ratification or accession, it will be in a position under its domestic law to give effect to the provisions of this Convention." Paris Convention for the Protection of Industrial Property, 21 U.S.T. at 1664; see also art. 6, id. at 1639 ("The conditions for the filing and registration of trademarks shall be determined in each country of the Union by its domestic legislation.").

The majority of other Courts of Appeals that have considered the issue have also held that the Paris Convention is not self-executing. See, e.g., Int'l Café, S.A.L. v. Hard Rock Café Int'l, Inc., 252 F.3d 1274, 1277 n.5 (11th Cir. 2001); Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287, 1298-99 (3d Cir. 1979); Ortman v. Stanray Corp., 371 F.2d 154, 157 (7th Cir. 1967); see also S. Rep. No. 87-1019 (1961), reprinted in 1961 U.S.C.C.A.N. 3044, 3045 ("The provisions of the Convention of Paris are not self-executing, and legislation is therefore needed to carry into effect any provision not already in our present law."); 19 Op. Att'y Gen. 273, 279 (1889) (In an opinion dated April 5, 1889, the Attorney General of the United States stated, "[The Paris Convention] is therefore not self-executing, but requires legislation to render it effective for the

modification of existing laws."). But see Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 640-41 (2d Cir. 1956) (stating that the Paris Convention is self-executing but does not create private rights for acts occurring in foreign countries).

Rath relies upon Davidoff Extension S.A. v. Davidoff Int'l, Inc., 221 U.S.P.Q. 465 (S.D. Fla. 1983), for the proposition that the Paris Convention is self-executing. Davidoff holds that the Paris Convention is self-executing. However, we are not bound by this decision and we do not find it persuasive.[2]

IV

Rath alternatively argues that section 44(e) of the Lanham Act is congressional legislation implementing the Paris Convention, and that section 44(e) itself requires registration because the Paris Convention requires registration. Whatever the situation with respect to other sections of the Lanham Act, section 44(e) cannot be construed as Rath urges.

Section 44(e) of the Lanham Act provides:

---

[2] Even less persuasive is Rath's reliance on a German Federal Supreme Court case, (J.A. at 107-112 (reproducing Federal Supreme Court (Bundesgerichtshof) 05.04.1990 Case No. 1 ZB 7/89 "FE")), holding that Germany's prohibition on registering letter trademarks, such as "FE", conflicts with the requirements of the Paris Convention, and therefore cannot be applied against a foreign citizen of a Paris Union country.

Rath's invocation of the Trade-Related Aspects of Intellectual Property agreement ("TRIPs") (which incorporates the Paris Convention) is also unavailing. TRIPs is also not self-executing as 19 U.S.C. § 3512(a)(1) specifically provides that "[n]o provision of any of the Uruguay Round Agreements [including TRIPs], nor the application of any such provision to any person or circumstance, that is inconsistent with any law of the United States shall have effect." 19 U.S.C. § 3512(a)(1) (2000). Congress has also specifically precluded any person other than the United States from using TRIPs as a cause of action or a defense, and from challenging government action on the ground that such action is inconsistent with TRIPs. 19 U.S.C. § 3512(c)(1) (2000).

"(e) Registration on principal or supplemental register; copy of foreign registration.—A mark duly registered in the country of origin of the foreign applicant may be registered on the principal register <u>if eligible</u>, otherwise on the supplemental register herein provided. Such applicant shall submit, within such time period as may be prescribed by the Director, a certification or a certified copy of the registration in the county of origin of the applicant. The application must state the applicant's bona fide intention to use the mark in commerce, but use in commerce shall not be required prior to registration."

Lanham Act § 44(e), 15 U.S.C. § 1126(e) (2000) (emphasis added).

In cases of ambiguity, we interpret a statute such as section 44(e) of the Lanham Act as being consistent with international obligations. <u>Murray v. The Schooner Charming Betsy</u>, 6 U.S. (2 Cranch) 64, 118 (1804); <u>Allegheny Ludlum Corp. v. United States</u>, 367 F.3d 1339, 1348 (Fed. Cir. 2004); <u>Luigi Bormioli Corp. v. United States</u>, 304 F.3d 1362, 1368 (Fed. Cir. 2002). However, even assuming that the surname provision of the Lanham Act is inconsistent with the Paris Convention, section 44(e) is not susceptible to a construction that the surname rule is overcome where there has been an earlier foreign registration, and the <u>Charming Betsy</u> presumption is inapplicable. Congress did not simply adopt language incorporating the requirements of the convention in the Lanham Act. Rather it provided for registration of a foreign mark "if eligible." A mark is not "eligible" for registration on the principal register under the statute unless it satisfies the section 2 requirements, including the surname rule.

The legislative history cited by the concurrence does not support a contrary conclusion. There is no question but that Congress generally intended section 44 of the Lanham Act to implement the Paris Convention.[3] But this does not mean that Congress

---

[3] Lanham Act § 45, 15 U.S.C. § 1127 (2000) ("The intent of this Act is . . . to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United

intended to do so in every respect or that it actually accomplished that objective in all respects or that it correctly understood the requirements of the Paris Convention in enacting section 44. To the extent that there was any consideration of the continued applicability of United States eligibility requirements to foreign marks, the legislative history cited by the concurrence suggests, at most, that Congress intended to permit registration of otherwise ineligible marks on the supplemental register, not the principal register.[4] There is simply no way to read this history as suggesting that Congress intended to require registration on the principal register despite United States eligibility requirements. If anything, the history confirms that the principal register was available to foreign registrants and United States citizens on equal terms—both had to meet the eligibility requirements of United States law.[5]

---

States and foreign nations."); H.R. Rep. No. 78-603, at 4 (1943) ("This bill attempts to accomplish these various things: . . . 2. To carry out by statute our international commitments . . . .").

[4] The portion of the hearings cited in the concurrence expressed concern that a phrase in the part of the bill that would become section 44(e), which allowed registration on the supplemental register even if the mark was not registrable under section 2, might permit the registration of scandalous marks on the supplemental register. This concern was resolved by removing the phrase concerning registration on the supplemental register. Trade-Marks: Hearing on H.R. 4744 Before the Subcomm. On Trademarks of the House Comm. on Patents, 76th Cong. 169-71 (1939).

[5] The following exchange took place in the subcommittee hearings:

Mr. Byerly. . . . Now 1 is the principal register, and 23 is the supplemental register, so that [then section 44(c), current section 44(d)] allows [a foreign applicant] to put [his mark] on either register, and naturally he will be guided as to which one he puts it on, as to which one our law allows, whether it is the sort of mark to go on one or the other. . . .

Mr. Rogers. Dr. Ladas thought that subsection (d) [now (e)] was desirable, to make it perfectly plain that if these foreigners could not get a registration under the principal register, they could under the supplemental register . . . .

. . . .

What is apparent from the face of the statute is confirmed by the cases as well. The issue whether section 44 acts to excuse an applicant from proving the distinctiveness of a surname mark as to the applicant's goods arose in our earlier Darty case. Unlike this case, Darty did not involve an earlier foreign registration. Rather, the applicant in Darty filed an application, based on an earlier foreign application, to register the mark "DARTY" on the principal register, relying on section 44(d) of the Lanham Act to give it priority.[6] Darty, 759 F.2d at 16, 18. The examiner refused to register the applicant's mark on the principal register because the examiner found the mark primarily merely a surname, and the Board affirmed. Id. at 16. On appeal, this court again affirmed and held that a foreign applicant who claimed priority based on a foreign

---

> The idea was to give the foreigner an opportunity, if he could, to qualify on the principal register, all right; if he could not, he could come under the supplemental register. It is just like our own citizens . . . .

Id. at 170. Interestingly, Dr. Ladas, referenced in the hearing, ultimately expressed the same view in his treatise—that section 44(e) was designed to provide for registration on the supplemental register and "if eligible" on the principal register. 2 Stephen P. Ladas, Patents, Trademarks and Related Rights: National and International Protection § 572 (1975).

[6] The current section 44(d), 15 U.S.C. § 1126(d), provides, in pertinent part: An application for registration of a mark . . . filed by a person described in subsection (b) of this section who has previously duly filed an application for registration of the same mark in one of the countries described in subsection (b) of this section shall be accorded the same force and effect as would be accorded to the same application if filed in the United States on the same date on which the application was first filed in such foreign country: Provided, That—

> . . . .
> (2) the application conforms as nearly as practicable to the requirements of this Act, including a statement that the applicant has a bona fide intention to use the mark in commerce.

filed application under section 44(d) of the Lanham Act was not excused from the surname rule. Id. at 18. Instead, we found that

> Section 44(d)(2) merely excuses certain foreign applicants from alleging use in commerce to secure registration under the statute. The section does not require that registration be afforded on the Principal Register, as opposed to the Supplemental Register, in the absence of a showing of secondary meaning acquired by use in this country.

Id. (footnote omitted). In so holding, we did not decide the question whether section 44 generally (or section 44(d) specifically) is coextensive with the Paris Convention. In a later section 44(d) case we stated that although "[a] section 44 applicant is excused from the statutory requirement that a mark must be used in commerce in or with the United States before such application is filed . . . [a]n application under section 44 must, however, satisfy all the other provisions of the Act . . . ." In re Mastic Inc., 829 F.2d 1114, 1115 (Fed. Cir. 1987) (citations omitted).

We specifically noted in Darty that "[s]ection 44(e) specifically directs issuance of registration on the Principal Register only 'if eligible.'" 759 F.2d at 18. The language of section 44(e) itself makes clear that the reference to eligibility pertains to eligibility for registration on the principal register, rather than eligibility under the Paris Convention. The leading treatise confirms this interpretation. McCarthy states that the requirement of eligibility necessarily means "that the mark is subject to all the recognized statutory bars to U.S. registration." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 29:13 (4th ed. 2004). Section 2(e)(4) of the Lanham Act—prohibiting the registration of a mark that "is primarily merely a surname" on the principal register—is such an eligibility requirement. 15 U.S.C. § 1052(e)(4).

Rejecting the relevance of <u>Darty</u>, Rath and the concurrence rely on various cases that suggest that the implementing legislation and the Paris convention are coextensive. In this connection Rath, like the concurrence, relies primarily on the Board's decision in <u>Crocker National Bank v. Canadian Imperial Bank of Commerce</u>, 223 U.S.P.Q. 909 (TTAB 1984). But <u>Crocker</u> did not directly address the interpretation of the "if eligible" clause of section 44(e). The actual holding of <u>Crocker</u> "is that a foreign national qualified under § 44(b) is entitled to an alternative basis for registration of a trademark registered in its country of origin without regard to whether such mark is in use prior to the application's filing date." <u>Id.</u> at 924.[7] Broader language in <u>Crocker</u> stated that the Paris Convention "establish[ed] a minimum standard for all member countries as to what grounds for refusal of registration of any mark duly registered in the country of origin can be imposed by the other countries" and

> that Section 44 is an independent provision, standing on its own feet with respect to applications for registration depending upon it and the conventions as the bases for United States registration, <u>except for such formal requirements and conditions for registration as are consistent with the purposes of the conventions and the implementing statute</u>.

<u>Id.</u> at 917, 920-21 (emphasis added). We have previously approved the holding in <u>Crocker</u> ("that regarding an application based on foreign registration under 15 U.S.C. § 1126(e), [an] applicant need not meet the otherwise applicable statutory requirements regarding prior use of the mark") but not the broader language. <u>In re Compagnie Generale Mar.</u>, 993 F.2d 841, 843 n.3 (Fed. Cir. 1993).

---

[7] At the time <u>Crocker</u> was decided, the statutory definition of a trademark required that the mark be previously used. 15 U.S.C. § 1127 (1982 & Supp. II 1984). That definition was later amended, and now includes a mark that is used or a mark that a person has a bono fide intention to use in commerce. 15 U.S.C. § 1127 (2000).

Like Crocker, none of the other cases relied on by Rath or by the concurrence concludes that section 44(e) of the implementing legislation had the effect of eliminating the eligibility requirements of U.S. law or adopting the registration standards of article 6quinquies of the Paris Convention. Rather, those cases dealt with issues of priority or prior use—the effects of section 44(d) of the implementing legislation (dealing with preexisting foreign applications) on priority aspects of United States law (found in section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d)), or the effects of the section 44 implementing legislation on the then-prevailing prior use requirement (which is a basis for registration).[8] These authorities thus are of little use in addressing the scope and meaning of the "if eligible" requirement of section 44(e).

---

[8] Two of the authorities relied on by the concurrence addressed the interplay between section 2(d), which prohibited the registration of a mark with a confusing resemblance to a mark already used by another in the United States, and section 44(d). See SCM Corp v. Langis Foods Ltd., 539 F.2d 196 (D.C. Cir. 1976); Allan Zelnick, Shaking the Lemon Tree: Use and the Paris Union Treaty, 67 Trademark Rep. 329 (1977). The SCM court held that section 44(d) accords a foreign applicant a six-month "right to priority" following the filing of its foreign application, but does not otherwise alter the requirements of section 2(d). SCM Corp., 539 F.2d at 201-02. The article opines upon the effect SCM might have on the continued vitality of the use requirement. Zelnick, 67 Trademark Rep. at 343-46.

The other authorities relied on by the concurrence deal almost exclusively with the prior use requirement. In re Compagnie Generale Mar., 993 F.2d at 843 n.3 (affirming the holding of Crocker that the prior use requirement does not apply to 15 U.S.C. § 1126(e) applicants); Lane Ltd. v. Jackson Int'l Trading Co., 33 U.S.P.Q.2d 1351 (TTAB 1994) (discussing bona fide intent to use); Clairol Inc. v. Compagnie D'Editions et de Propagande du Journal La Vie Claire-Cevic S.A., 24 U.S.P.Q.2d 1224 (TTAB 1991) (discussing bona fide intent to use); Crocker, 223 U.S.P.Q. at 924 (finding no prior use requirement for qualified foreign applicants); In re Certain Incomplete Trademark Applications, 137 U.S.P.Q. 69 (Dec. Comm'r Pat. 1963) (finding the prior use requirement applicable to foreign applicants); Ex parte Societe Fromageries Bel, 105 U.S.P.Q. 392 (Dec. Comm'r Pat. 1955) (finding that the prior use requirement does not apply when an applicant relies on a foreign registration); Daniel R. Bereskin & Aaron Sawchuk, Crocker Revisited: The Protection of Trademarks of Foreign Nationals in the United States, 93 Trademark Rep. 1199 (2003) (discussing the use requirement); Jeffery M. Samuels & Linda B. Samuels, The Changing Landscape of International

Thus, we conclude that while section 44(e), like section 44(d), affects United States priority or prior use rules, it is impossible to read section 44(e) to require the registration of foreign marks that fail to meet United States requirements for eligibility. Section 44 applications are subject to the section 2 bars to registration, of which the surname rule is one. McCarthy at § 29:13. Whether the surname rule conflicts with the requirements of the Paris Convention as applied to foreign registrants is a matter we need not decide.

## CONCLUSION

The decision of the Board is

## <u>AFFIRMED</u>.

## COSTS

No costs.

---

<u>Trademark Law</u>, 27 Geo. Wash. J. Int'l L. & Econ. 433, 448-49 (1993-94) (noting the response of Congress to <u>Crocker</u>).

# United States Court of Appeals for the Federal Circuit

04-1419,-1420
(Serial Nos. 75/753,445 and 75/753,597)

IN RE DR. MATTHIAS RATH

BRYSON, Circuit Judge, concurring.

I fully concur in Parts I, II, and III of the court's opinion.  With respect to Parts IV and V, I concur only in the result.  In Parts IV and V, the court holds that the Lanham Act overrides the requirements of the Paris Convention with respect to the rights of foreign registrants.  The majority acknowledges that Congress sought to implement the Paris Convention through the Lanham Act but concludes, surprisingly, that Congress did not "accomplish[ ] that objective."

The question whether the Lanham Act should be read to conflict with and trump the Paris Convention is a difficult one that has significant potential implications for international intellectual property law.  Because I do not believe it is necessary to decide that issue in this case, I would instead decide the case on the narrower ground that the Lanham Act and the Paris Convention are in accord as applied in this case.

The position taken by the majority is summarized by McCarthy, who states, albeit without much support, that "[a]part from the special benefits extended to applications by foreign persons under § 44, such applications are subject to all the normal bars to United States registration on the Principal Register."  4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 29:13 (4th ed. 2004).  Besides citing some

dated TTAB opinions for that proposition,[1] McCarthy cites this court's decision in In re Establissements Darty et Fils, 759 F.2d 15 (Fed. Cir. 1985). The pertinent discussion of the issue in that case, however, is terse and unenlightening. The court merely stated in the closing paragraph of Darty that section 44(d) did not excuse the applicant from the need to prove secondary meaning to register a surname. The court then added that section 44(e) "specifically directs issuance of a registration on the Principal Register only 'if eligible.'" Id. at 18. That language does not indicate whether the court was suggesting that proof of secondary meaning for a surname is required only under the Lanham Act, or is required by both the Lanham Act and the Paris Convention, and it is therefore not a sufficient ground on which to rest the decision of this important question.

I

The language of the Paris Convention, together with the language of the Lanham Act that adopts the Paris Convention, seems unequivocally to give foreign registrants rights unless their foreign registered marks fall within one of the express exceptions set forth in Article 6 of the Convention.

> Article 6quinquies of the Paris Convention states, in its current version:
>
> Every trademark duly registered in the country of origin shall be accepted for filing and protected as is in the other countries of the Union.
>
> Trademarks covered by this Article may be neither denied registration nor invalidated except in the following cases: . . . when they are devoid of any distinctive character.

Paris Convention for the Protection of Industrial Property, July 14, 1967, Art. 6quinquies, 21 U.S.T. 1583. Congress enacted the Lanham Act in large part to meet its

---

[1] Those TTAB opinions all predate the Board's decision in Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce, 223 USPQ 909, 928 (TTAB 1984), and therefore represent superseded Board law.

obligation to protect the rights afforded registrants in the Paris Convention. See Crocker, 223 USPQ at 928 (the goal of meeting the requirements of international treaties "pervaded deliberations in legislative hearings over a period of six years during which the structure of the eventual Act was formulated or perfected"). Section 45 of the Lanham Act makes that explicit: "The intent of this Act is to . . . provide rights and remedies stipulated by treaties and conventions respecting trademarks . . . entered into between the United States and foreign nations." 15 U.S.C. § 1127. Section 44(b) of the Lanham Act further provides:

> Any person whose country of origin is a party to any convention or treaty relating to trademarks . . . to which the United States is also a party . . . shall be entitled to the benefits of this section under the conditions expressed herein to the extent necessary to give effect to any provision of such convention, treaty or reciprocal law, in addition to the rights to which any owner of a mark is otherwise entitled by this chapter.

15 U.S.C. § 1126(b) (emphasis added). The clear import of that language is that the treaties to which the United States is a party, including the Paris Convention, may give foreign nationals greater trademark rights than are available to United States citizens. See SCM Corp. v. Langis Foods Ltd., 539 F.2d 196, 201-02 (D.C. Cir. 1976) (while recognizing that section 2(d) of the Lanham Act prohibits United States nationals from registering a trademark "previously used in the United States by another," the court held that registration in a foreign country trumped that requirement in part due to Article 4 of the Paris Convention); see also Allan Zelnick, Shaking the Lemon Tree: Use and the Paris Union Treaty, 67 Trademark Rep. 329, 339 (1977) ("The very purpose of [Article 6quinquies] was to afford nationals of member states a right to request in all other member country states marks which nationals of the receiving country could not file in their home country.").

04-1419,-1420                                    3

Although the PTO's interpretation of section 44 in light of the Paris Convention has changed over time, see John B. Pegram, Trademark Law Revisions: Section 44, 78 Trademark Rep. 141, 162-70 (1988), the PTO has explicitly adopted the view that the Paris Convention gives foreign nationals rights under the Lanham Act that may be unavailable to United States citizens. In Ex parte Societe Fromageries Bel, 105 USPQ 392 (Dec. Comm'r Pat. 1955) (charmingly denominated "the Merry Cow case"), the Commissioner considered the case of a foreign owner of a trademark who attempted to obtain a United States trademark but had not provided any evidence that the mark had been used in commerce. Interpreting section 44 of the Lanham Act, the Commissioner noted that "it is apparent that there are no inconsistencies between the Convention and the statute, so the only matter left for consideration is the interpretation" of Article 6. Id. at 397. The Commissioner stated that if the case did not fall within the three exceptions enumerated in Article 6quinquies then

> [r]educed to its simplest form, Article 6 merely means that when a registration of a mark has issued in an applicant's home country ("country of origin") in accordance with the law of that country, the United States Patent Office will, upon receipt of a properly executed application . . . accept the foreign registration at face value and issue a registration in the United States.

Id. at 398. The Commissioner found that all the formal conditions for registration of a trademark under the Lanham Act were met and therefore registered the foreign owner's mark without requiring that the owner show prior use in the United States. Id. at 397.

Merry Cow remained the law until 1963, when the Commissioner revisited the question whether a foreign applicant had to demonstrate prior use of the mark under section 44. In the case of In re Certain Incomplete Trademark Applications, 137 USPQ 69 (Dec. Comm'r Pat. 1963), the Commissioner reversed Merry Cow and required

foreign applicants under section 44 to show prior use, although the case was decided on a narrower ground than the Merry Cow decision. Id. at 75. Specifically, the Commissioner noted that Article 6 of the Paris Convention allowed every member country of the Union to individually determine the "conditions for filing and registration," and that the requirement to show prior use was such a formal "condition" of filing a trademark application. Id. Thus, although the Commissioner disagreed with the result in Merry Cow, the ground for his disagreement was a narrow one not applicable to this case: the Commissioner overruled Merry Cow on the ground that the requirement to demonstrate prior use was a formality. The Commissioner made plain, however, that rejections based on substantive requirements, such as descriptiveness, were prohibited by both the Lanham Act and the Paris Convention.

Even the Commissioner's narrow interpretation that upheld the requirement of showing prior use was not allowed to stand. In the 1984 Crocker case, the TTAB overruled Certain Incomplete Trademark Applications, holding that a showing of use was not required of foreign applicants because

> Section 44 is an independent provision, standing on its own feet with respect to applications for registration depending upon it and the conventions as the bases for United States registration, except for such formal requirements and conditions for registration as are consistent with the purpose of the conventions and implementing statute.

223 USPQ at 918. The Board concluded that Article 6quinquies of the Paris Convention "establish[ed] a minimum standard for all member countries as to what grounds for refusal of registration any mark duly registered in the country of origin can be imposed by the other countries." Id. at 920-21. Therefore, the Board reaffirmed the underlying principle of both Merry Cow and Certain Incomplete Trademark Applications that the

Lanham Act and the Paris Convention limit the substantive grounds on which the PTO can refuse a foreign trademark owner's application.

The Crocker decision continues to be good law. In In re Compagnie Generale Maritime, 993 F.2d 841 (Fed. Cir. 1993), this court addressed a case in which a foreign trademark applicant was denied United States registration of a mark based on geographical descriptiveness. This court first had to address whether Crocker set forth the controlling principles of law. We held that it did: "Crocker National Bank was governing case law at the time of [Compagnie Generale Maritime's] applications and still is today." Id. at 844 n.3. It is clear that the court in Compagnie Generale was well aware of Crocker and Merry Cow. As Judge Nies stated, id. at 857 (Nies, C.J., dissenting),

> [t]he Crocker Bank decision . . . adopted the view that a use requirement was a substantive ground of rejection . . . and that a foreign registration could be rejected only on the grounds recognized in the Convention itself. Those grounds, per Crocker Bank, are only those found in Article 6 [6quinquies of Lisbon text].

It is clear that Judge Nies, in dissent, understood that Merry Cow and Crocker set forth the governing law at the time, although she expressed the view that those cases should be overruled. Id. at 858.

Judge Nies was not alone in her belief that Crocker was controlling law. The Board has consistently treated Crocker as controlling authority. See Lane Ltd. v. Jackson Int'l Trading Co., 33 USPQ2d 1351 (TTAB 1994); Clairol Inc. v. Compagnie D'Editions Et De Propagande Du Journal La Vie Claire-Cevic S.A., 24 USPQ2d 1224 (TTAB 1991). Commentators have also assumed that Crocker is still controlling authority, with some suggesting that it may only be undone through legislation. See Daniel R. Bereskin & Aaron Sawchuk, Crocker Revisited: The Protection of Trademarks

of Foreign Nationals in the United States, 93 Trademark Rep. 1199 (2003); Jeffrey M. Samuels & Linda B. Samuels, The Changing Landscape of International Trademark Law, 27 Geo. Wash. J. Int'l L. & Econ. 433, 448-49 (1994).

Crocker has been criticized, and it may be that Crocker was not correctly decided. But the principle underlying that decision cannot be lightly disregarded, particularly in view of this court's endorsement of Crocker in the Compagnie Generale case. The majority states that we have approved of only the "holding" of Crocker and not the "broader language." To accept the result of Crocker without the rationale, however, makes little sense. Crocker did not simply state the prior use rule in a vacuum, but came to it only after a careful analysis of the history of the Paris Convention and Lanham Act.

In addition to citing the Darty case, addressed above, the majority cites In re Mastic, Inc., 829 F.2d 1114 (Fed. Cir. 1987), which stated that an application under section 44 of the Lanham Act must satisfy "all other provisions of the Act including, inter alia, the requirement that the mark is not likely to cause confusion with a registered mark." That statement does not support the view that the Lanham Act is inconsistent with the Paris Convention, since likelihood of confusion with a registered mark is one of the grounds on which the Paris Convention permits a foreign registration to be denied. Thus, the cited passage from Mastic, like the cited passage from Darty, does not indicate that the Lanham Act conflicts with the Paris Convention, but rather may simply reflect the understanding that the particular requirements at issue are imposed by both authorities. At the time those cases were decided, after all, it was generally understood that the Lanham Act explicitly adopted the requirements of the Paris Convention, and

that the statutory bars to registration allowed by the Paris Convention were congruent with the bars to registration created by the Lanham Act. See 2 Stephen P. Ladas, Patents, Trademarks and Related Rights, National and International Protection § 572 (1975) ("[T]he reasons for which registration is denied on the principal register are those for which, under article 6quinquies of the Paris Convention, a contracting party may refuse a mark even though it is registered in the country of origin."). If Judge Nies had thought her opinions in Darty and Mastic had effectively overruled Crocker Bank, she would not have needed to argue in her dissent in Compagnie Generale that Crocker and Merry Cow should be overturned; the deed would already have been done.

II

The legislative history of the Lanham Act makes clear that one of Congress's major goals in passing the Act was to satisfy this country's obligations under the Paris Convention. See S. Rep. No. 79-1333 (1946), reprinted in 1946 U.S.C.C.A.N. 1274, 1276 ("Industrialists in this country have been seriously handicapped in securing protection in foreign countries due to our failure to carry out, by statute, our international obligations."). That goal remained clear throughout the original deliberations on the Act. See Crocker, 223 USPQ at 932 (reproducing the remarks of Commissioner Coe in the 1938 House hearings) ("[I]n the interest of clarity, as well as the integrity of treaty obligations, we have put the treaty provisions into our law.") (emphasis added). In fact, that intent was explicitly placed into the statute in 15 U.S.C. §§ 1126-27.

Legislative history from later amendments of the Lanham Act shows a continuing commitment to that original purpose. In urging the 1961 amendments to section 44, the Department of State explained that the Paris Convention had two separate

requirements: (1) national treatment so that "each member country is required to extend to nationals of other member countries the same protection and rights which it grants to its own nationals"; and (2) "each country is required to provide certain rights or special advantages for other members' nationals." S. Rep. No. 87-1019 (1961), reprinted in 1961 U.S.C.C.A.N. 3044, 3048. The Department of State, however, believed that it could not legally deposit the ratified copy of the Lisbon version of the Paris Convention until Congress specifically implemented changes to the Lanham Act. Id. at 3049. Therefore, the government clearly felt that the United States' participation in the Paris Convention actually required the enactment of the Lanham Act. Such a belief would be illogical if Congress had regarded the Lanham Act as inconsistent with the Paris Convention. In addition, the State Department noted that most of the changes in the Lisbon version would not require changes to the Lanham Act, "since most of the changes are already consonant with our law." Id. Since then, Congress has repeatedly reaffirmed that the Lanham Act implemented the United States' obligations under the Paris Convention. See, e.g., S. Rep. No. 100-515 (1988), reprinted in 1988 U.S.C.C.A.N. 5577, 5606 ("These amendments will not affect U.S. obligations under the Paris Convention.").

While accepting that Congress intended section 44 to implement the Paris Convention, the majority notes that Congress may have failed to achieve that objective or failed to understand the requirements of the Paris Convention. Yet it seems inconceivable that Congress could specifically try to implement a piece of legislation, fail, and then labor for 60 years under the delusion that it had done so. That possibility seems especially unlikely since a "treaty will not be deemed to have been abrogated or

modified by a later statute, unless such purpose on the part of Congress has been clearly expressed." Cook v. United States, 288 U.S. 102, 120 (1933). The Paris Convention explicitly requires each member country to adopt appropriate legislation to implement the Convention. See Paris Convention, Art. 25 (Every member country "undertakes to adopt, in accordance with its constitution, the measures necessary to ensure the application of this Convention."). Congress did nothing to suggest that it was not following the obligations of Art. 25 when it adopted the Lanham Act.

Pointing to the provision of section 44(e) that grants registration to foreign registrants "if eligible," the majority asserts that section 44 applicants must be "eligible" for registration under section 2 and therefore foreign registrations are subject to all of the section 2 bars to registration, regardless of whether those bars may violate the substantive provisions of international agreements such as the Paris Convention. That conclusion is surprising, particularly in light of the fact that Congress originally included such language in section 44(e) and expressly deleted it. A prior version of section 44(e) read, "A mark duly registered in the country of origin of the applicant and not registrable under section 2 of this Act may be registered on the supplemental register." H.R. 4744, 76th Cong. § 45(d) (1939). Congress eliminated that requirement of registrability under section 2 in the enacted version of the Lanham Act. Furthermore, while that change was under consideration, one of the purposes of section 44(e) was said to be "to make it clearer that we should not refuse registration to the foreign applicant on the ground that it was not trademark subject matter under our law." Trade-Marks: Hearings on H.R. 4744 Before the Subcomm. on Trademarks of the House Comm. on Patents, 76th Cong. 170-71 (1939). In light of that background, it seems unlikely that the words "if

eligible" were intended to mean "registrable under section 2 of the Act," thus reinserting in shorthand form the very provision that had been purposefully omitted.

In light of (1) our treaty obligations; (2) the fact that section 44 was viewed as a distinct piece of legislation implementing those treaty obligations; (3) the legislative purpose behind the Lanham Act; and (4) our decision in Compagnie Generale, the term "if eligible" is more appropriately read to refer to the explicit eligibility requirements set forth in section 44(b), which incorporates the eligibility requirements of applicable international agreements, including the Paris Convention. In other words, the applicant must be a person whose country of origin is a party to a convention relating to trademarks, the restrictions set forth in section 44 must not apply, and registration must be allowable under the applicable conventions. In the event those requirements are satisfied, the person is "eligible" for the benefits conferred by section 44. In sum, the more natural reading of the "if eligible" language of section 44(e) is that it refers to eligibility under section 44 of the Lanham Act and thus incorporates the requirements of the Paris Convention for foreign applications.

III

Instead of adopting the position that the Paris Convention confers no rights on foreign registrants—a position not adopted by the TTAB and not argued by any party in this appeal—I would decide this case on the ground upheld by the Board and argued by the government: that the Paris Convention and the "primarily merely a surname" rule are not inconsistent. That approach makes it unnecessary to decide whether the requirements of section 2 of the Lanham Act prevail over the eligibility provisions of the Paris Convention.

Article 6quinquies permits nations that are parties to the convention to bar registration of marks that are "devoid of distinctive character" or merely descriptive because, for instance, they only designate the kind, intended purpose, or place of origin of the good. Surnames are a subset of "merely descriptive" marks. Courts have routinely conflated those two categories, but have nevertheless held that surnames fall into these categories. See Conan Props., Inc. v. Conans Pizza, Inc., 752 F.2d 145, 155 (5th Cir. 1985) ("'Conan' is a surname and can be regarded as a descriptive term rather than an inherently distinctive mark."); Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999) ("Marks that are 'primarily merely surnames' constitute a specific subcategory of descriptive marks."); Larsen v. Terk Techs. Corp., 151 F.3d 140, 148 (4th Cir. 1998) ("The use of a surname as a mark . . . is considered to be a descriptive mark and generally must develop secondary meaning in order to receive protection."); Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 125 (4th Cir. 1990) ("[B]oth surnames and first names—are regarded as descriptive terms."). The overwhelming weight of authority is that surnames are both descriptive and void of distinction. Although the policies underlying the "primarily merely a surname" rule and the prohibition against registration of "merely descriptive" marks differ, see Peaceable Planet, Inc. v, Ty, Inc., 362 F.2d 986 (7th Cir. 2004), the two have traditionally been closely associated and, in light of the historical treatment of the two, it is not unreasonable to regard the "devoid of any distinctive character" category of the Paris Convention as encompassing surnames. Accordingly, I would affirm the Board's decision on this narrow ground; I would not decide whether the Lanham Act and the Paris Convention can be read disparately with respect to foreign registrants, and

whether foreign registrants have no rights under the Paris Convention unless those rights are also conferred by the Lanham Act.