**THIS DISPOSITION IS CITABLE AS PRECEDENT OF THE TTAB**

Hearing:
01 November 2005

Mailed:
28 February 2006
AD

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————

**Trademark Trial and Appeal Board**
————

In re Adrian Giger and Thomas Giger
————

Serial No. 76545470
————

Joerg-Uwe Szipl of Griffin & Szipl, P.C. for Adrian Giger and Thomas Giger.

A.D. Saunders, Trademark Examining Attorney, Law Office 108 (Andrew Lawrence, Managing Attorney).
————

Before Hohein, Bucher, and Drost, Administrative Trademark Judges.

Opinion by Drost, Administrative Trademark Judge:

On September 17, 2003, Adrian Giger and Thomas Giger (joint applicants[1]) applied to register the mark GIGER MD, in standard character form, on the Principal Register for goods ultimately identified as:

Medical apparatae, namely physical therapy apparatae; orthopedic articles, namely powered exercise machines

———————————————

[1] See Response dated August 3, 2004 at 6.

for therapeutic services; and exercise machines for therapeutic purposes in Class 10 and

Gymnastic and sporting articles, and exercising equipment, namely powered exercising equipment; exercise machines; and gymnastic apparatus in Class 28.

The application, Serial No. 76545470, contains allegations of dates of first use anywhere of March 19, 1996, and in commerce of June 24, 2003, for both classes. In addition, the application is based on applicants' claim of ownership of a Swiss registration (No. 430382) issued March 19, 1996.

The examining attorney refused to register applicants' mark on the ground that the mark is primarily merely a surname under Section 2(e)(4) of the Trademark Act. 15 U.S.C. § 1052(e)(4). After the examining attorney made the refusal final, applicants filed a notice of appeal. An oral hearing was held November 1, 2005.

Before we turn to the merits of the examining attorney's refusal, we must first address applicants' objection to the evidence submitted with the examining attorney's denial of applicants' request for reconsideration. Applicants, relying on 37 CFR § 2.142(d) and TBMP § 1207.01, argue that "[a]mple opportunity existed in the first and second office actions for the Examiner to submit such evidence." Reply Brief at 3. While the

"record in the application should be complete prior to the filing of an appeal" (37 CFR § 2.142(d)), in this case applicants also specifically elected to file a request for reconsideration.  Under these circumstances, the examining attorney may submit additional evidence:

> A timely request for reconsideration of an appealed action may be accompanied by additional evidence, which will thereby be made part of the evidentiary record in the application.  There is no need, in such a situation, for a 37 CFR § 2.142(d) request to suspend and remand for additional evidence.  Evidence submitted with a timely request for reconsideration of an appealed action, that is, a request filed during the six-month response period following issuance of the appealed action, is considered by the Board to have been filed prior to appeal, even if the notice of appeal was, in fact, filed earlier in the six-month response period than the request for reconsideration.
>
> When a timely request for reconsideration of an appealed action is filed (with or without new evidence), the examining attorney may submit, with his or her response to the request, new evidence directed to the issue(s) for which reconsideration is sought.  However, the applicant may not submit additional evidence in response to any evidence submitted by the examining attorney unless the examining attorney's action is a nonfinal action to which a response may be filed.  Otherwise, if the applicant wishes to submit additional evidence, it must file a request for remand.

TBMP § 1207.04 (2d. ed. rev. 2004).  See also TMEP § 715.04(g) (4th ed. April 2005) ("In an Office action denying the applicant's request for reconsideration, the examining attorney may introduce additional evidence

directed to the issue(s) for which reconsideration is sought").

Inasmuch as applicants sought reconsideration after the examining attorney's final refusal, the examining attorney was permitted to submit evidence in response to this request and applicants' request that we not consider such evidence is denied.

We now turn to the merits of this case, i.e., the propriety of the examining attorney's refusal to register applicants' mark on the ground that it is primarily merely a surname. The case law sets out a number of factors to be used to determine if the term is primarily merely a surname. "Among the factors to be considered … are the following: (i) whether the surname is rare; (ii) whether anyone connected with applicant has the involved term as a surname; (iii) whether the term has any other recognized meaning; and (iv) whether the term has the 'look and feel' of a surname." In re United Distillers plc, 56 USPQ2d 1220, 1221 (TTAB 2000).[2] In addition, consideration must be given to the impact a term has or would have on the purchasing public because "it is that impact or impression

---

[2] Another factor, not applicable here, concerns the stylization of the mark, which, if it is "distinctive enough, this would cause the mark not to be perceived as primarily merely a surname." See In re Benthin Management GmbH, 37 USPQ2d 1332, 1334 (TTAB 1995).

which should be evaluated in determining whether or not the primary significance of a word when applied to a product is a surname significance. If it is, *and it is only that*, then it is primarily merely a surname." In re Harris-Intertype Corp., 518 F.2d 629, 186 USPQ 238, 239 (CCPA 1975), quoting, Ex parte Rivera Watch Corp., 106 USPQ 145 (Comm'r 1955) (emphasis in original).

The examining attorney provided several different types of evidence to support her refusal. She submitted a list of more than fifty phone listings for individuals with the surname "Giger." Another page from the "USFIND Person Locator – Nationwide" indicated that there were 545 entries for the surname "Giger," and seven of these entries are included on the page. The examining attorney also included a page from Microsoft Bookshelf Basics that did not reveal any entries for the term "Giger" in *The American Heritage Dictionary*, *The Original Roget's Thesaurus*, or *The Columbia Dictionary of Quotations.*

Other evidence includes LEXIS/NEXIS printouts that show several individuals throughout the United States who have the surname "Giger," including participants in local sporting events and those who have filed for bankruptcy. See *St. Louis Post-Dispatch*, April 11, 2005; *Chicago Daily Herald*, March 11, 2005; and *Wichita Eagle*, April 10, 2005.

In addition, the examining attorney's evidence includes a printout from Ancestry.com that shows that there are 15,177 matches in the site's records for the name "Giger."

Applicants have included a printout showing that the USFIND Person Locator "contains 123 million consumer records and over 1 million business records."

We now must determine whether "Giger" is a rare surname. The evidence of 545 entries is not substantial evidence that the term "Giger" is a common surname. In a recent case, the board held that the surname "Rogan," which appeared in 1,087 listings in phone directories, was not a rare surname.

> In the case at hand, the record reveals that the (now former) Director of the United States Patent and Trademark Office is James Rogan. Moreover, the record reveals that Mr. Rogan was the majority leader of the California State Assembly before being elected to represent a U.S. House district in Southern California; that he received press attention for his role as an impeachment manager during the impeachment trial of former President Clinton; and that he subsequently received additional press attention for his role as a candidate for re-election in what was reported to be, at that time, the most expensive race ever for a seat in the U.S. House of Representatives. In addition, the record reveals that a Salt Lake City councilman is named Tom Rogan. We think it is fair to conclude that large numbers of individuals in the Southern California and Salt Lake City areas would be exposed to the names of these elected officials, whether during an election campaign, in a polling place, or in news reports on government activities.

In re Gregory, 70 USPQ2d 1792, 1795 (TTAB 2004). The board determined that the "existence of these individuals with the surname ROGAN leads us to conclude that the name may be rare when viewed in terms of frequency of use as a surname in the general population, but not at all rare when viewed as a name repeated in the media and in terms of public perception. Accordingly, we conclude that ROGAN is not a rare surname." Id.

We note that in this appeal there is little evidence that the name Giger has achieved even the modest fame of the surname Rogan and, therefore, we conclude that the surname Giger is not a common surname in the United States and, thus it would be somewhat rare. See United Distillers, 56 USPQ2d at 1221 ("Hackler" held to be a rare surname despite 1295 listings in phone directories).[3]

However, the fact that a term is not a common surname does not mean that a surname would not be considered to be primarily merely a surname. See, e.g., In re E. Martinoni Co., 189 USPQ 589, 590 (TTAB 1975) ("The fact that 'MARTINONI' may be a rare surname does not entitle it to treatment different from what would be accorded to a common

---

[3] While applicant compares the number of Giger hits against the total number of entries in the database, we note that given "the large number of different surnames in the United States, even the most common surnames would represent but small fractions of such a database." Gregory, 70 USPQ2d at 1785.

surname when no other meaning for the word is shown"). See also In re Industrie Pirelli Societa per Azioni, 9 USPQ2d 1564, 1566 (TTAB 1988) ("Applicant's evidence proves that 'Pirelli' is a rare surname but fails to rebut the Examining Attorney's prima facie showing that 'Pirelli' would be viewed as a surname by the relevant public"). In one case, the Federal Circuit has noted that "the examiner made of record evidence that others in a number of cities in this country bear the surname DARTY. Thus, as a surname, DARTY is not so unusual that such significance would not be recognized by a substantial number of persons." In re Etablissements Darty et Fils, 759 F.2d 15, 225 USPQ 652, 653 (Fed. Cir. 1985). In the present case, the listings include New Haven, Connecticut; Springfield, Illinois; South Bend, Indiana; Altoona, Pennsylvania; Glendale, Arizona; Grosse Pointe Woods, Michigan; Madison, Wisconsin; Los Angeles, California; Salem, Oregon; Kansas City, Kansas; and Virginia Beach, Virginia. As with Darty, we find that the surname significance of "Giger" would be similarly recognized by prospective purchasers.

The second factor we consider is whether anyone associated with applicant has the surname "Giger." In this case, the joint applicants are named Adrian Giger and Thomas Giger. Furthermore, one of the specimens contains a

photograph of applicants' goods in use.  The picture

includes the following information:

> GIGER MD THERAPY at the
> Spina Bifida Association (SBAA)
> Conference June 2002
>
> Thomas Nyffeler, Physiotherapist and Clinic Director
> and Adrian Giger giving GIGER MD Therapy to
> disabled people.

Clearly, not only is the name "Giger" the surname of the

applicants, but also applicant's surname is featured in

applicants' promotional material.  Therefore, this factor

clearly supports a finding that the term is primarily

merely a surname.

The third factor we consider is whether there is

evidence of another recognized meaning of the term GIGER.

In this case, there is no evidence that the term "Giger"

has any other meaning in English or any other language.  In

re Isabella Fiore LLC, 75 USPQ2d 1564, 1568 (TTAB 2005) (We

"hold that whether a term is primarily merely a surname

must take into consideration the meaning the term has in a

foreign language").  At oral argument, applicants requested

that we take judicial notice of possible meanings of the

term in two dictionaries.  We grant applicants' request and

take judicial notice of these definitions. University of

Notre Dame du Lac v. J.C. Gourmet Food Imports Co., 213

USPQ 594, 596 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ

505 (Fed. Cir. 1983). However, we note that even these definitions do not support applicants' arguments. The entries in one include "gig" and "gigerium." *Webster's New Universal Unabridged Dictionary* (2d ed. 1983). The other, in a German dictionary, defines "gigerl" apparently as "dandy; fop." *Duden Oxford* (1990). None of these dictionary entries is for the term "Giger" and we cannot conclude that the term "Giger" has any non-surname significance. Therefore, this factor supports the surname significance of the term.

The final factor we address is whether the term has the "look and feel" of a surname. We conclude that it does. First, there are numerous individuals with the surname "Giger." Second, it has no other known significance. See Gregory, 70 USPQ2d at 1796 ("We conclude that ROGAN has the look and sound of a surname. It would not be perceived as an initialism or acronym, and does not have the appearance of having been coined by combining a root element that has a readily understood meaning in its own right with either a prefix or a suffix. Rather, ROGAN appears to be a cohesive term with no meaning other than as a surname") (footnote omitted). Third, it is the surname of both applicants. Therefore, this factor favors the examining attorney's position.

When we view the term GIGER under the factors set out in United Distillers, we conclude that the examining attorney has met her initial burden of showing that the term GIGER would primarily be viewed as a surname and applicants have not rebutted this prima facie case.

However, we must consider the mark as a whole and the mark for which applicants seek registration is not GIGER alone, it is GIGER MD. Therefore, we look at whether the term MD changes the significance of the mark.[4] We take judicial notice that M.D. means "Doctor of Medicine." Obviously, when a surname is combined with the term MD, the perception of the term would emphasize that the named person is a doctor. The fact that applicants have added another term to a surname does not automatically detract from the surname significance of the term. This is particularly true in the case of titles and other indicia that simply reinforce the surname meaning of the term. See In re Rath, 402 F.3d 1207, 74 USPQ2d 1174 (Fed. Cir. 2005) (Federal Circuit affirmed board decision holding that DR. RATH was primarily merely a surname); In re I. Lewis Cigar Mfg. Co., 205 F.2d 204, 98 USPQ 265 (CCPA 1953) ("S.

---

[4] We note that the examining attorney originally required a disclaimer of the term "MD." The examining attorney did not maintain this requirement in her appeal brief, and we consider it to have been withdrawn.

SEIDENBERG & CO.'S" held primarily merely a surname); In re Revillon, 154 USPQ 494, 495 (TTAB 1967) ("Insofar as the 'MLLE.' portion of applicant's mark is concerned, it is an abbreviation for the word 'Mademoiselle' which is the French equivalent of the courtesy title 'Miss'; and, in our opinion, as used it enhances rather than diminishes the surname significance of 'REVILLON.'  It is therefore concluded that 'MLLE. REVILLON' is primarily merely a surname").  Even the use of a mark with other terminology on the specimen can reinforce the surname significance of the mark.  Etablissements Darty, 225 USPQ at 653  (The fact that Darty et Fils, used on the specimens, translates as Darty and Son, "in itself, is highly persuasive that the public would perceive DARTY as a surname").  In this case, applicants' goods include medical equipment for physical therapy, orthopedic articles, namely powered exercise machines for therapeutic services, and exercise machines for therapeutic purposes.  There would be nothing incongruous with using a surname with the abbreviation MD for medical and therapeutic equipment.  It is certainly not a nebulous term that detracts from the surname significance of the mark.  See In re Hutchinson Technology Inc., 852 F.2d 552, 7 USPQ2d 1490 (Fed. Cir. 1988) (HUTCHINSON TECHNOLOGY not primarily merely a surname).  Therefore,

when we consider the primary significance of the entire mark, GIGER MD, when it is used on applicants' medical, therapeutic, and sporting goods, we conclude that prospective purchasers would understand that the term is primarily merely a surname.

Decision:  The refusal to register applicants' mark GIGER MD on the ground that it is primarily merely a surname is affirmed.